UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CASE NO. 12-10462-KKS

IN RE:
MATTHEW BRUCE HINTZE and
LARINA K. HINTZE,

Debtors.

* * * * * * * * * * * * * * * * * * * * * * * * * *
JOHN SPENCE, et al.,

CASE NO. 13-01007-KKS
Plaintiffs/Counterclaim-Defendants, Adversary
Proceeding
          -v-
MATTHEW BRUCE HINTZE and
LARINA K. HINTZE,

Defendants/Counterclaim-Plaintiffs,
Third-Party Plaintiffs,
           -v-
ETHAN FIELDMAN and STEVEN FIELDMAN,

Third-Party Defendants.
* * * * * * * * * * * * * * * * * * * * * * * * * *

PROCEEDINGS:          Motion Hearing

BEFORE:               Honorable Karen K. Specie,
                      Chief Bankruptcy Court Judge

DATE:                 February 4, 2016

TIME:                 2:02 - 2:59 p.m.

PLACE:                United States Courthouse
                      401 Southeast First Avenue
                      Gainesville, Florida  32601

REPORTED BY:          APRILLE LUCAS, FPR
                      Court Reporter, Notary Public

* * * * * * * * * * * * * * * *
Vanlandingham Durscher & Vanlandingham
408 W University Ave Suite 505
Gainesville, FL  32601
(352)371-1537

 1    APPEARANCES:

 2         TREVOR A. THOMPSON, ESQUIRE
           CLARK PARTINGTON HART LARRY BOND & STACKHOUSE
 3         106 EAST COLLEGE AVE., SUITE 600
           TALLAHASSEE, FL  32301-7721
 4
               FOR THE TRUSTEE
 5

 6         RYAN E. DAVIS, ESQUIRE
           WINDERWEEDLE, HAINES, WARD AND WOODMAN
 7         390 N. ORANGE AVENUE
           SUITE 1500
 8         ORLANDO, FL 32801

 9            FOR CHRISTOPHER JAMES, TUTORING ZONE II,
              CYNTHIA FRENCHMAN
10

11         ROBERT D. WILCOX, ESQUIRE
           814 A1A NORTH, SUITE 202
12         PONTE VEDRA BEACH, FL  32082

13            FOR FLH HOLDINGS, INTERMED BIOMEDICAL SERVICES,
              INC.,
14            JOHN SPENCE, SHEILA SPENCE, DAVID WHITNEY

15
           BETSY C. COX, ESQUIRE
16         ROGERS TOWERS
           1301 RIVERPLACE BOULEVARD
17         SUITE 1500
           JACKSONVILLE, FL  32207
18
               FOR INTERMED RECOVERY, LLC (by telephone)
19

20

21

22

23

24

25

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2          THE COURT:  Good afternoon.  We're here in
 3     the case of Matthew Bruce and Larina K. Hintze
 4     Chapter 7 Case Number 12-10462.  Before the Court
 5     is the continued hearing on the Trustee's Motion
 6     to Approve Compromise under Rule 9019, and the
 7     hearing to consider the Notice of Intention to
 8     Sell Property of the Estate.
 9          We will take appearances, please.
10          MR. THOMPSON:  Your Honor, Trevor Thompson,
11     on behalf of the Trustee Theresa Bender.
12          MR. DAVIS:  Good afternoon, Ryan Davis on
13     behalf of Christopher James, TZ2, and Cynthia
14     Frenchman.
15          MR. WILCOX:  Good afternoon, Your Honor,
16     Robert Wilcox on behalf of John Spence and Sheila
17     Spence, InterMed Biomedical Services, and TZ
18     Acquisition Corp., FLH Holdings of Florida, and
19     David Whitney.
20          THE COURT:  Thank you.
21          And then by phone, Ms. Cox?
22          MS. COX:  Good afternoon, Your Honor, Betsy
23     Cox on behalf of InterMed Recovery LLC.
24          THE COURT:  Thank you.  Is there anyone else
25     that wishes to appear or be heard in this case?
```

1          Let the record reflect that there is no one.

2     I would also like to welcome, and for the rest of

3     you don't know who they are, in the back of the

4     courtroom are a number of students from University

5     of Florida College of Law, primarily from the

6     Advanced Bankruptcy program, along with their

7     Professor, Jeff Davis.  They're here to observe

8     the proceedings.

9          Mr. Thompson?

10         MR. THOMPSON:  Your Honor, we're here, as the

11    Court mentioned, on the continued hearing on the

12    9019 settlement the Trustee reached, back in

13    November, for $30,000 with the settling parties

14    having to do with Dr. James, the debtors, the

15    debtors' brother and father.  And what happened in

16    the January 6th hearing is that there was news of

17    a potential overbid, that the Court requested was

18    formalized.

19         As part of that process, we worked together

20    and came up with a order that really put a very

21    shortened time window for this bidding process,

22    but everyone has collaborated effectively.  We got

23    the order entered, perhaps a little bit late, but

24    enough time that everyone knew the basics of what

25    was happening.  And the Trustee's submitted

1   memoranda, docket entry 563, had to do with the

2   parties' compliance with the deposit requirements

3   and the bidding requirement on TZ Acquisitions'

4   part as of January 15th, and docket entry 572,

5   which was the update having to do with everything

6   that was finalized by January 29th, and the

7   Trustee's contact with TZ Acquisition, that

8   indicated that they intended to go through with

9   moderated bidding.

10      One of the things which was slightly unclear,

11  coming off of the January hearing, is going to be

12  how the bidding would necessarily work, vis-a-vis

13  the settlement memorandum, the settlement motion.

14  The Trustee, in her memorandum, gave an indication

15  that the Trustee would view, even if no one else

16  were to bid at this time, the Trustee would view

17  the sale as preferable.

18      Standing alone, just comparing the two as of

19  today, I would imagine that if the Court had any

20  lingering concerns, it would be probably be best

21  to continue -- or to complete the sale, and so we

22  know really what money is on the table in both

23  respects.  To that end, in the memoranda the

24  Trustee brought up a few issues, which the Court

25  may choose to address before, before the bidding,

1    moderated bidding, were to commence.

2       One is the idea that the bidding increment

3    has not necessarily been decided.  My

4    understanding is that TZ Acquisition would be fine

5    with a $5,000 increment.  The Trustee had

6    suggested a higher level of granularity, either of

7    1,000 or $2500 increments, but that really is a

8    matter to the Court's discretion.

9       THE COURT:  And the parties haven't reached

10    agreement on that at this point?

11       MR. THOMPSON:  Not to my knowledge, no.

12    There was alo an issue having to do with what the

13    Trustee termed bidding protection, which is a

14    concern that, if a party's not required to ever

15    pay up, then one never knows if the bid that was

16    made was genuine.  To that end, the parties have

17    reached an agreement before the hearing, and I'd

18    allow anyone, if I'm wrong or mistaken, to stand

19    up and correct me here; then what would happen, in

20    the event that a winning bidder was unable to

21    close, would be that the winning bidder would

22    forfeit their deposit with the Trustee, and the

23    second-place bidder would essentially be able to

24    get the property at the lowest bid that they'd

25    entered to this point.  And so that would be

1    40,000 in the case of TZ Acquisition, 45,000 in

2    the case of Dr. James.

3         This would guarantee essentially, either way

4    it works, an $85,000 minimum recovery in the event

5    of a non-bid.  If there's truly more value here

6    than anticipated, and it gets up into the

7    200,000s, this might be a bad deal, but, from the

8    Trustee's perspective, it, at the very least,

9    guarantees finality.

10        If one party doesn't close, and the other

11   parties decides we don't like the number we got to

12   with second place, then we'd end up back here

13   again.  And rather than go through this process

14   again, the finality in that interest would be

15   preferable to the Trustee.

16        THE COURT:  All right.  Let me make sure I

17   understand what you've just said.  So, once we

18   conclude the bidding, assuming the higher bidder

19   does not close, for whatever reason, that party's

20   deposit, as of today, is forfeit.  Is that

21   correct?

22        MR. THOMPSON:  Yes, Your Honor.

23        THE COURT:  And so with respect to, then,

24   regardless of how high the bidding goes, the next

25   bidder in line gets to go back to the bid that

Page 8

1       they placed as of the date of this hearing today?

2           MR. THOMPSON:  The first bid that they're

3       starting with as of today.

4           THE COURT:  The starting bid as of today, all

5       right.  Very well.

6           Mr. Wilcox, anything further on that subject?

7           MR. WILCOX:  No.

8           THE COURT:  Mr. Davis, anything further on

9       that subject?

10          MR. DAVIS:  As to the increments, we're

11      indifferent between the 2500 or 5,000, whatever

12      the Court prefers.

13          THE COURT:  Ms. Cox, any preference on

14      anything to date, other than what's been already

15      stated?

16          MS. COX:  No, Your Honor.

17          THE COURT:  Well, Mr. Wilcox suggested a

18      5,000 increment.  Is that correct, Mr. Wilcox?

19          MR. DAVIS:  Yes, Your Honor.

20          THE COURT:  And since Mr. Davis's clients

21      don't object to that, then I'd say we'll go with

22      $5,000 increments.

23          We did have an objection filed.  Do we have

24      Mr. Thompson -- and, first of all, Mr. Thompson,

25      thank you for your notice of supplemental

1       information.  It was educational, and it helped

2       put all pieces together.  Where are we with

3       respect to the objection?

4            MR. THOMPSON:  Your Honor, in the memoranda

5       that was filed on Monday, I believe, the Trustee

6       indicated that she anticipated that Dr. James and

7       TutoringZone II would raise this, if, for no other

8       reason, than to preserve the issue.

9            THE COURT:  Place holder, okay.

10           MR. THOMPSON:  I believe the issue was

11      effectively preserved by the order itself, in

12      which it suggested that whoever was going to be

13      the winning bidder, or whoever was making a bid,

14      was basically taking it subject to the Court's

15      determination on the Chapter 5 actions down the

16      road.

17           And my understanding, having not actually

18      participated in this conversation -- this is

19      clearly hearsay, which is absolutely excludable

20      under the rules -- is that Mr. Davis and Mr.

21      Wilcox have agreed that dealing with that issue

22      down the road is fine with them.

23           THE COURT:  Mr. Davis?

24           MR. DAVIS:  Your Honor, that's correct.  I

25      did discuss that with Mr. Wilcox.  The issue

1    really becomes moot, if my client is the high

2    bidder.  So we decided we could deal with that on

3    a separate day, in addition to the fact that the

4    report notice of sale just takes it as-is

5    where-is, whatever can be conveyed.

6         I did want to note for the record, though, as

7    to whatever causes of action may be remaining or

8    left over, for whatever reason, with the estate,

9    the Trustee has made it very clear in writing to

10   the parties, and in filings with the Court, that

11   those leftover causes of action will not be

12   pursued, at least not the ones against

13   TutoringZone II, Chris James, or Cynthia

14   Frenchman.

15        And so our bid is with that assumption that

16   we are buying a piece, at least vis-a-vis the

17   bankruptcy estate and the Trustee, Your Honor, and

18   that's what we've been told.

19        THE COURT:  All right.  Thank you, Mr. Davis.

20        Mr. Wilcox?

21        MR. DAVIS:  Thank you.  There was one other,

22   as far as the conveyance of -- I told the Court,

23   when we talked about this previously, that our

24   understanding is that we are buying whatever the

25   Trustee is, in her best efforts, able to convey.

Electronically signed by Aprille Lucas (401-378-453-4568)                    8dca5229-e342-469b-aac4-9b30bc0021b4

1           I'd also like to make the point, there was

2      something raised in the objection the other day

3      that I, frankly, don't even understand, which is

4      that there was an objection to the -- what was

5      allegedly the conveyance of the Trustee by the

6      Trustee of the TutoringZone causes of action.

7           She's conveying TutoringZone, and those

8      causes of action would go with the ownership of

9      TutoringZone, it seems to me.  I just want to make

10     that clear for the record, because that is

11     important to my client.

12          THE COURT:  I understand, and I believe that

13     is correct, with respect to what Mr. Thompson

14     filed, but Mr. Thompson, you can go ahead and

15     clarify that for the record, as well.

16          MR. THOMPSON:  Yes, Your Honor.  It was

17     really a question so much as Dr. James wanted to,

18     to basically argue the, the meaning of the report

19     notice of sale.  It was our understanding, the

20     Trustee's understanding, that the only thing

21     that's being signed over is the membership

22     interest.  It's not the equivalent of signing a

23     corporate document on behalf of TutoringZone

24     conveying the cause of action, so much as whoever

25     takes TutoringZone, it's just under new

Electronically signed by Aprille Lucas (401-378-453-4568)          8dca5229-e342-469b-aac4-9b30bc0021b4

Page 12

1     management.

2          THE COURT:  Exactly.  In other words, the

3     Trustee's selling the estate's interest in

4     TutoringZone, and whatever that is comprised of

5     goes to the buyer.

6          MR. THOMPSON:  And the second part of that is

7     the Trustee's causes of action, to the extent that

8     one could read that to be that the Trustee, from a

9     causal perspective, getting all the way back to

10     law school, was the cause of TutoringZone having

11     filed these causes of action.  It's our

12     understanding that the use of Trustee, in part B

13     of the property, really is meant in the sense of

14     these causes of action brought in the name of the

15     Trustee, separate and apart from those brought in

16     the name of TutoringZone.  As long as everyone is

17     comfortable with the clarification, that certainly

18     was our intent when we reviewed the report notice

19     and approved it.

20          There is one additional issue I wanted to

21     respond to with respect to Mr. Davis.  The Trustee

22     has taken a position, in both of the memoranda

23     before the Court, both 572 and docket 575, in

24     which the Trustee believes that the Counts 5

25     through 8 are somehow unique and special compared

Page 13

1      to the other avoidance actions, Counts 13 through

2      15.  And the Trustee really doesn't view Counts 5

3      through 8 as necessarily competitive with any

4      particular buyer, so to speak, and they're really

5      is a question, if those causes of action weren't

6      able to transfer, what mechanism would be

7      available.

8          The Trustee simply doesn't want to be in a

9      position where, down the road, we find out that

10     what was really conveyed on the as-is where-is

11     basis was only 98 percent, and now the Trustee is

12     obligated to pursue the Chapter 5 causes of

13     action.  Again, we're trying to extricate

14     ourselves as cleanly as possible.

15         THE COURT:  Mr. Wilcox?

16         MR. WILCOX:  Very briefly, Your Honor.  I

17     wonder if it wouldn't be helpful if the Trustee's

18     counsel would walk us through the counts they're

19     attempting to convey, just so we have that on the

20     record.  We just don't want any confusion about

21     that, and I --

22         THE COURT:  Well, and let me stop you for a

23     moment, too, and ask Mr. Davis a question.  I know

24     it's out of school, but, Mr. Davis, does your

25     client or do you have a position with respect only

Electronically signed by Aprille Lucas (401-378-453-4568)                                    8dca5229-e342-469b-aac4-9b30bc0021b4

Page 14

1          to Counts 5 through 8 of the complaint?

2               MR. DAVIS:  Your Honor, we're not concerned

3          about those counts.  Those counts are not against

4          my clients.  I believe those are the counts, the

5          clawback, 2 percent of the membership interest, so

6          don't involve my clients.

7               THE COURT:  All right, so no objection, so at

8          this moment all parties in agreement that Counts 5

9          through 8 of the complaint are being sold, along

10         with the estate's interest in the LLC.

11              All right, then, Mr. Thompson?  Count 1 is a

12         declaratory action, is it not?

13              MR. THOMPSON:  Yes, Your Honor.  Counts 1

14         through 4 are interrelated declaratory actions.  I

15         recognize this is a case where that handy chart

16         that I created long ago would come in handy.  It's

17         at docket entry 1-11, if the Court were looking to

18         jump to it.  It's an Excel spreadsheet.

19              THE COURT:  1-11 in the main case?

20              MR. THOMPSON:  In the adversary proceeding

21         14-01005.

22              THE COURT:  Just a moment, please.

23              Thank you very much.  You may proceed.

24              MR. THOMPSON:  Your Honor, just for the

25         purpose of reciting for the record, and I

1      apologize in advance to the court reporter for the

2      length this will take, Counts 1 through 4 are

3      declaratory judgment actions in the name of the

4      Trustee.  These are the legal questions having to

5      do with the transfer of 100 percent membership

6      interest.  The first count is whether the Trustee

7      solely owns TutoringZone or the membership

8      interest at the time of the petition under 541.

9           Count 2 has to do with, if TutoringZone's

10     membership interest was owned tenancy by the

11     entirety, or that the Trustee succeeded to full

12     authority based on the joint debtors' filing.

13          Count 3 is, if TutoringZone was owned, for

14     some reason, 50/50 between Matthew and Larina

15     Hintze, whether the Trustee would succeed to full

16     authority.

17          And Count 4 is whether the Trustee succeeded

18     to both the management and the economic rights of

19     LLC membership, if all the interests were owned by

20     the debtors.

21          THE COURT:  All right.  Why don't we take

22     these in groups.  With respect to Counts 1 through

23     4, what are the parties' positions with respect to

24     those being included in the Trustee's intent to

25     sale?

1        MR. WILCOX:  Robert Wilcox for TZ

2     Acquisition, we think those are included.

3        THE COURT:  All right.  Mr. Davis?

4        MR. DAVIS:  No objection to the inclusions of

5     those counts, Your Honor.

6        THE COURT:  All right, very well.  We've

7     already talked about Counts 5 through 8, so at

8     this moment Counts 1 through 8, inclusive, are

9     being sold along with the LLC membership interest.

10        Mr. Thompson?

11        MR. THOMPSON:  Thank you, Your Honor.  Count

12     9 is a declaratory judgment action.  This was

13     based on the factual premise that in, I believe it

14     was January or February 2014, someone purporting

15     to act on behalf TutoringZone transferred

16     authority, without discussion with the Trustee,

17     who believed herself to be the 100 percent owner,

18     thus the manager, and it's a declaratory judgment

19     seeking to delay any such actions taken post

20     petition by anyone other than the Trustee

21     [inaudible] void.

22        THE COURT:  Does anyone object to Count 9

23     being included in the sale?

24        MR. WILCOX:  Robert Wilcox for TZ

25     Acquisitions.  We believe that's included in the

Page 17

1      sale.

2           MR. DAVIS:  No objection to the inclusion of

3      that count in the sale.

4           THE COURT:  Thank you very much.  Now we're

5      up to Counts 1 through 9, inclusive.

6           MR. THOMPSON:  Your Honor, Count 10 is a

7      count for the breach of the duty of care.  This is

8      essentially an alternative to declaring the

9      actions void.  If the actions were not void for

10     some reason, then the person acting on behalf of

11     TutoringZone, to the extent they damaged the

12     company is seeking, is basically seeking money

13     damages for that breach.

14          THE COURT:  Any objection to Count 10, Mr.

15     Wilcox?

16          MR. DAVIS:  No, Your Honor.  We think it's

17     included.

18          THE COURT:  Mr. Davis?

19          MR. DAVIS:  No objection, Your Honor.

20          THE COURT:  Very well.  Thank you.  Now we're

21     up to 1 through 10.

22          MR. THOMPSON:  Your Honor, Count 11 is a

23     civil conspiracy count.  This, too, is essentially

24     an alternative being related to Counts 9 and 10.

25     It seeks an equitable trust -- or equitable remedy

1    in the form of a constructive trust, to the extent

2    that any misappropriated property be returned to

3    TutoringZone.  It alleges, essentially based on

4    that transfer that we are aware of, a conspiracy

5    between those two parties to violate the duties

6    owed to the company.

7         THE COURT:  Mr. Wilcox?  You can say included

8    or not included.

9         MR. DAVIS:  Included.

10        THE COURT:  Thank you, sir.

11        Mr. Davis?

12        MR. DAVIS:  Included.

13        THE COURT:  Thank you.

14        MR. THOMPSON:  Your Honor, Count 12 was

15   struck much earlier in the proceeding.  It's a

16   post-deadline discharge action, which was

17   basically struck without prejudice in the event

18   that such facts were to arise, that we could

19   essentially be back before the Court with a

20   pleading.

21        Count 13 is a preferential transfer count.

22   Counts 13 through 15 basically have the same

23   underlying theory.  They just use different parts

24   of the code.  Count 13 uses section 547 as a

25   preferential transfer.  Count 14 is section

Page 19

1      548-1(a), and Count 15 is section 548(a)1(b), and

2      the theory behind this count is very similar to

3      what the Court dealt with yesterday in, in the

4      discharge, the 727 count that is filed in

5      13-01007, the idea essentially being that the

6      nominal transfer of IP was, in effect, a transfer

7      of the membership interest, and it seeks a

8      recovery of the membership interest.

9           THE COURT:  Mr. Wilcox, included?  That's 13

10     through 15?

11          MR. DAVIS:  Included.

12          THE COURT:  Mr. Davis?

13          MR. DAVIS:  We object to the inclusion of 13

14     through 15.  We do not think those can be conveyed

15     by the Trustee.

16          THE COURT:  But that is what we discussed a

17     few moments ago, which is the sale will be subject

18     to your objection with all of the rights and

19     arguments having been preserved by the objection,

20     is that correct?

21          MR. DAVIS:  Yes, Your Honor.

22          THE COURT:  All right, so noted.  So at this

23     moment we're including -- and this, again, is

24     Adversary Proceeding Case Number 14-01005, Bender

25     versus Hintze, et al., and so far included in the

1          auction are Counts 1 through 11 of that complaint.

2          Excluded is Count 12, because that count was

3          dismissed earlier on, and then included are Counts

4          13 through 15, subject to the objection filed on

5          behalf of the James parties.  Is that correct so

6          far, gentlemen?

7                 MR. THOMPSON:  Yes, Your Honor.

8                 THE COURT:  All right.  Mr. Thompson?

9                 MR. THOMPSON:  Your Honor, Counts 16 through

10         20 are counts that are filed in the name of

11         TutoringZone with one small tweak, which is that

12         Count 19 is a civil conspiracy count.  The theory

13         behind these counts has to do with the impropriety

14         or alleged impropriety of the 2012 intellectual

15         property lease and transfer agreements.

16               And the argument being, under civil

17         conspiracy, that those parties that conspired to

18         basically take value from TutoringZone would be

19         liable to either TutoringZone, or to the extent

20         not TutoringZone, at least to its equity position.

21                 THE COURT:  All right, very well.

22               Mr. Davis, with respect to 16 through 20?

23                 MR. DAVIS:  We object to the inclusion of

24         those, and we understood the Trustee was taking

25         the position that those can't actually be conveyed

1          by the Trustee.  The Trustee was just conveying

2          the actual membership interest, and whoever the

3          owner is at that point in time has whatever rights

4          they do or don't have to pursue those causes of

5          action, but those actual causes of action will not

6          be conveyed, is what I understood from the

7          Trustee's notice and report filed that was filed

8          with the Court.

9               THE COURT:  Mr. Wilcox?

10              MR. WILCOX:  We don't have a -- I think that

11         they travel with TutoringZone.  We do think that

12         those are active -- to me, the owner of

13         TutoringZone should succeed to the litigation as

14         it currently exists.  In other words, if a

15         limitations defense has arisen since then, that

16         the we get -- whoever owns TutoringZone steps into

17         the shoes of the Trustee because of its ownership

18         of TutoringZone, with regard to these counts.

19              THE COURT:  Mr. Thompson?

20              MR. THOMPSON:  Your Honor, I really should

21         have corrected myself.  Count 20 should not be

22         included in this.  It's a declaratory judgment

23         count I will follow up on later, but the Trustee's

24         understanding is similar to, I believe, both

25         parties are essentially in agreement; the idea

Electronically signed by Aprille Lucas (401-378-453-4568)                                          8dca5229-e342-469b-aac4-9b30bc0021b4

Page 22

1     that these are not part of the sale, but the

2     functional transfer occurs to the extent that

3     TutoringZone would be under new management.

4          THE COURT:  All right, very well.  Then with

5     respect to Counts 16, 17, 18, and 19, whatever

6     rights in those counts that belongs to

7     TutoringZone remain with TutoringZone after this

8     sale is concluded.

9          MR. WILCOX:  That's our understanding.  Thank

10    you.

11         THE COURT:  Mr. Davis?

12         MR. DAVIS:  Yes, that's my understanding.

13         THE COURT:  Very well.  And then with respect

14    to Count 20?

15         MR. THOMPSON:  Your Honor, for the clarity of

16    the record, the Count 19 civil conspiracy, to the

17    extent that it's brought in the name of the

18    Trustee, was brought essentially in a capacity as

19    a member for money damages.  It wouldn't be a

20    Chapter 5 avoidance action as such.  The Trustee

21    would expect that that would transfer, but I

22    believe Mr. Davis will comment.

23         THE COURT:  Mr. Davis?

24         MR. DAVIS:  Your Honor, at this time we would

25    maintain an objection as to whether or not Count

Electronically signed by Aprille Lucas (401-378-453-4568)                    8dca5229-e342-469b-aac4-9b30bc0021b4

Page 23

1    20 can be conveyed by the Trustee.

2         THE COURT:  I believe Mr. Thompson at that

3    moment was asking for your comment on Count 19.

4         MR. DAVIS:  Oh, I'm sorry.  I thought 19

5    was --

6         THE COURT:  19 apparently was brought in the

7    name of both TutoringZone and the Trustee.  It is

8    the civil conspiracy count.

9         MR. DAVIS:  As to that count, I would object

10   to the extent the Trustee is conveying the

11   Trustee's cause of action, and then, to the extent

12   it's on behalf of TutoringZone, then whoever the

13   winning bidder is would have whatever rights

14   TutoringZone would have.

15        THE COURT:  And, once again, with respect to

16   the portion of your objection that relates to the

17   Trustee, that, as announced previously, is

18   articulated in the objection that you have filed

19   at docket number 574, and so all rights are

20   reserved with respect to that objection as to

21   Count 19?

22        MR. DAVIS:  Correct, thank you.

23        THE COURT:  All right, thank you.  Anything

24   further, Mr. Wilcox, on Count 19?

25        MR. WILCOX:  No.

1          MR. THOMPSON:  Your Honor, Count 20 is a

2     declaratory judgment action.  This is based on the

3     idea that, as part of the transactions having to

4     do with the IP lease and the IP transfer in May

5     and June 2012, Dr. James caused to be recorded a

6     lien over the assets of TutoringZone, and this is

7     similar, but not quite the same thing, as what was

8     discussed in 14-01001.

9          The issues here are substantially different

10     insofar as the nature of the IP lease and transfer

11     transactions would essentially guide whether a

12     lien existed at that point.

13          THE COURT:  With respect to Count 20, Mr.

14     Wilcox?

15          MR. WILCOX:  We think it's included in the

16     sale.

17          THE COURT:  Mr. Davis?

18          MR. DAVIS:  At this time we object to its

19     inclusion in the sale, Your Honor.

20          THE COURT:  Under the cover of the same

21     objection that we discussed before at docket 574?

22          MR. DAVIS:  Yes, Your Honor.

23          THE COURT:  And that objection is preserved,

24     and with that it will be included in the sale

25     subject to that objection.

Page 25

1        Anything further, Mr. Thompson?

2        MR. THOMPSON:  Your Honor, I believe that

3     covers all the housekeeping matters to date.  If

4     there are any other issues, I would defer.

5        THE COURT:  Then if you would please announce

6     for the record the bid that we are beginning with,

7     I'll start the bidding.

8        MR. THOMPSON:  Your Honor, at the present

9     time the current high bidder is Dr. James or his

10    designee at 45,000.  With the bidding increment of

11    $5,000, I believe the bidding begins at 50,000.

12       THE COURT:  Do I hear a bid of the amount of

13    $50,000?

14       MR. WILCOX:  Again, Robert Wilcox for TZ

15    Acquisitions, yes, we bid $50,000.

16       THE COURT:  TZ Acquisitions has bid $50,000.

17    Do I hear another bid?

18       MR. DAVIS:  Yes, Your Honor, Ryan Davis on

19    behalf of Chris James or his designee bids

20    $55,000.

21       THE COURT:  Mr. James, and I'll call it

22    Mr. James for simplicity's sake, although we all

23    recognize it's Mr. James or designee.  Mr. James

24    has submitted a bid of $55,000.  Do I hear any

25    other bids?

1          MR. WILCOX:  TZ Acquisition bids $60,000,

2     Your Honor.

3          THE COURT:  TZ Acquisitions has submitted a

4     bid of $60,000.  Do I hear any other bids?

5          MR. DAVIS:  Mr. James bids $65,000.

6          THE COURT:  I have a bid from Mr. James of

7     $65,000.  Do I hear any other bids?

8          MR. WILCOX:  TZ Acquisition bids $70,000.

9          THE COURT:  I have a bid of $70,000 from TZ

10    Acquisition.  Do I have any other bids?

11         MR. DAVIS:  Mr. James bids $75,000.

12         THE COURT:  I have a bid from Mr. James in

13    the amount of $75,000.  Do I hear any other bids?

14         MR. WILCOX:  TZ Acquisition bids $85,000.

15         THE COURT:  I have a bid from TZ Acquisition

16    in the amount of $85,000.  Do I hear any other

17    bids?

18         MR. DAVIS:  Mr. James bids $90,000.

19         THE COURT:  I have a bid from Mr. James in

20    the amount of $90,000.  Do I hear any other bids?

21         MR. WILCOX:  TZ Acquisition bids $95,000.

22         THE COURT:  I have a bid from TZ Acquisition

23    in the amount of $95,000.  Do I hear other bids?

24         MR. DAVIS:  Your Honor, I don't have any

25    further bidding authority.  I thought there was a

1      chance my client might be here.  I would ask for a

2      brief recess to call my client to see if I have

3      any additional bidding authority before we

4      conclude the auction.

5              THE COURT:  Mr. Wilcox?

6              MR. WILCOX:  Your Honor, this was -- I think

7      that's highly irregular.  We -- I think Mr. Davis

8      said he thought there was a chance his client

9      would be here.  Everyone understood the rules.

10     They had to be here today to bid, and this is it.

11     We came a long way to do this.  Let's -- so we

12     would object to that.

13             THE COURT:  Mr. Thompson, what's the

14     Trustee's position?

15             MR. THOMPSON:  Your Honor, the Trustee has

16     always got to have some interest in potential

17     increased bidding authority, but it is difficult

18     to rebut Mr. Wilcox's point.

19             THE COURT:  Mr. Davis?

20             MR. DAVIS:  Your Honor, I don't think it's at

21     all unusual to take recesses or breaks, and

22     certainly the interest of the estate is to

23     maximize the value of the estate, so I don't think

24     there's any harm in what would be no longer than a

25     ten-minute recess, Your Honor.

Page 28

1         THE COURT:  Does anyone recall -- I don't

2     recall this being addressed at all in the order

3     that set the bidding procedures.  Can anyone point

4     to me to a provision of the order that may have

5     anticipated this event?

6         MR. THOMPSON:  Your Honor, I'm unaware of

7     anything that anticipated this particular event.

8     Moderated bidding was essentially directed to

9     operate at the Court's discretion.

10        THE COURT:  Mr. Wilcox?

11        MR. WILCOX:  That's true, Your Honor.  We all

12    had ample opportunity to understand what our

13    client's authority was, but it is in the Court's

14    discretion.

15        THE COURT:  Give me just a moment, please.

16        The order is indeed silent on this issue.  It

17    does provide for moderated bidding in open court.

18    I have seen courts do it both ways.  I have seen

19    judges deny a break to consult, and I've seen more

20    actually grant an opportunity.  It is the best

21    interest of the bankruptcy estate to maximize

22    return to the creditors, and so for that reason we

23    will be in recess until 2:45.  Thank you.

24        (A recess was taken from 2:34 to 2:47 p.m.)

25        THE COURT:  Before the break I had a bid of

1       $95,000 from TZ Acquisitions.  Do I hear any other

2       bids?

3            MR. DAVIS:  Yes, Your Honor, Mr. James bids

4       $100,000.

5            THE COURT:  I have a bid from Mr. James in

6       the amount of $100,000.  Do I have any other bids?

7            MR. WILCOX:  Robert Wilcox for TZ

8       Acquisition.  TZ Acquisition bids $105,000.

9            THE COURT:  I have a bid from TZ Acquisition

10      in the amount of $105,000.  Do I hear other bids?

11           MR. DAVIS:  Mr. James bids $115,000.

12           THE COURT:  I have a bid from Mr. James in

13      the amount of $115,000.  Do I hear any other bids?

14           MR. WILCOX:  TZ Acquisition bids $120,000.

15           THE COURT:  I have a bid from TZ Acquisition

16      in the amount of $120,000.  Do I hear any other

17      bids?

18           I have a bid from TZ Acquisition of $120,000.

19      $120,000 going once, $120,000 going twice, going

20      three times to TZ Acquisition, $120,000 sold.

21           This sale is concluded.

22           MR. WILCOX:  Thank you, Your Honor.

23           THE COURT:  Thank you to all parties.

24      Pursuant to the terms of the order, the full

25      amount of the purchase price needs to be deposited

1        with the Trustee by the 10th, is it, Mr. Thompson?

2        February 10, 2016?  And I'm reading specifically

3        from paragraph ten, subpart (d), as in David, of

4        the order at docket number 566 where it says, and

5        I quote, to the extent that the winning bidder has

6        not already delivered funds equal to the winning

7        bid to the Trustee, the winning bidder shall be

8        required, by February 10, 2016, to deliver

9        additional funds to the Trustee such that the

10       total amount from the winning bidder on deposit

11       with the Trustee is equal to 100 percent of the

12       amount of the winning bid.

13            So the sale is now concluded.  Is there any

14       need for the Court to take up the proposed

15       settlement?  Mr. Davis?

16            MR. DAVIS:  Your Honor, the settling parties

17       still seek approval of the compromise.  We believe

18       that at the time of the hearing that the Court

19       should have approved the compromise as being

20       settlement, as being within the reasonable range

21       of settlement.  The Vasquez case that we cited

22       talked about whether or not a settlement falls

23       below the lowest range, the lowest point in the

24       range of reasonableness.

25            At the time of the compromise hearing the

Page 31

1      Trustee's counsel indicated that, prior to filing

2      the compromise motion, the Trustee had explored

3      various options, had spoken with the interested

4      parties, and was faced with two different

5      proposals at that point in time, a 20,000 and a

6      $30,000 proposal.

7           At the time of the hearing there was an oral

8      offer that was made by counsel for TZ Acquisition,

9      and that oral offer on the record was $40,000.  We

10     believe that record that showed a compromise of

11     30,000, in light of a high bid of 40,000 and a

12     prior offer of 20,000, put 30,000 right within the

13     range of reasonableness and actually above the

14     lowest point in the range of reasonableness.  So

15     we believe that the compromise should have been

16     approved.

17          We understand that the Court ordered this

18     parallel track.  I would note for the record that

19     the proposed bidder is not a creditor of the

20     estate.  It's an entity, TZ Acquisition, and

21     essentially what we have is a party that we

22     believe to be a hostile party.  It stands for,

23     presumably, TutoringZone Acquisition acquiring

24     these various causes of action, so it's a

25     violation of the doctrine of champerty and

Electronically signed by Aprille Lucas (401-378-453-4568)                    8dca5229-e342-469b-aac4-9b30bc0021b4

1      maintenance.

2           And so we believe, in light of the record at

3      the time of the actual compromise hearing, that

4      30,000 was a reasonable settlement, and that the

5      Court at that point in time could have deferred to

6      the Trustee's business judgment and approved the

7      settlement.  Thank you, Your Honor.

8           THE COURT:  Thank you, Mr. Davis.

9           Mr. Thompson?

10          MR. THOMPSON:  Your Honor, the Trustee's

11     position was outlined in docket entry 572,

12     beginning with paragraph 27 on page 12, and

13     continuing for a few pages.  It notes that there

14     is substantial authority for the idea that

15     reasonableness is not necessarily determined on

16     the date of the hearing, or of the date in which

17     the Trustee executes the settlement, but it

18     continues all the way to the date of the hearing,

19     at which point the Court can entertain alternate

20     propositions.

21          As it turns out, the Trustee was faced, at

22     the time of settlement, with a $20,000 sale which

23     had the possibility of going up, and the $30,000

24     guaranteed settlement.  The Trustee's calculation

25     at that point, as today's record has demonstrated

Page 33

1       aptly, was incorrect.

2           The idea that moderated bidding did have a

3       higher ceiling was not something that was

4       anticipated, and the Trustee was, frankly, wrong

5       in entering settlement on that basis.  It was a

6       reasonable decision at the time, but later events

7       have given the Court, not necessarily the

8       Trustee -- the Trustee's caught between the two

9       perspectives as was recited in the 3rd Circuit

10      case -- but it gives the Court the discretion to

11      operate, and that discretion is something that the

12      Trustee entitles to the Court's judgment.

13          THE COURT:  Thank you.

14          Mr. Wilcox, would you care to be heard as to

15      the settlement?

16          MR. WILCOX:  No, Your Honor.

17          THE COURT:  Thank you.

18          Well, as you know, we are here on a continued

19      motion by the Trustee for approval of the

20      settlement agreement that had been submitted to

21      the Court and the parties, and that we considered

22      at the last hearing.  Many bankruptcy courts view

23      approval of settlements, especially when they

24      entail, as this proposed settlement did, the sale

25      of assets, because this settlement, as proposed,

Page 34

1       by the Trustee, included not only a settlement of

2       all of the estate's claims against the settling

3       parties, but also a transfer to the settling

4       parties of the estate's interest in what's been

5       sold today, which are the estate's interests in

6       TZ, TutoringZone.

7            Today obviously has resulted in a much more

8       generous result for the creditors in the case.

9       The bidding was fair.  The bidding was handled

10      pursuant to this Court's order and on terms that

11      were agreed to by all parties.

12           The assets being sold will constitute --

13      well, will put the Trustee in a position of doing

14      what she's been wanting to do for awhile now, and

15      that is extricate herself and the estate from any

16      further litigation against the parties in this

17      case.

18           And the result of $120,000 to the estate,

19      over 30,000 from the settling parties, especially

20      in light of the concomitant transfer of the causes

21      of action that are included in the settlement --

22      I'm sorry, in the sale, is a better result for the

23      estate, and so, accordingly, the Trustee's Motion

24      for Approval of the Settlement is denied.

25           And the Notice of Intent to Sell is approved,

Page 35

1        and the sale to TZ Acquisition of the assets

2        announced for the sum of $120,000 is approved

3        pursuant to the terms and conditions of the order

4        at docket number 566 that was continuing the

5        hearing on the settlement and establishing

6        procedures for alternative bidding.

7              Does anyone wish to bring anything further

8        before the Court at this time?

9              Mr. Thompson, since the Trustee was in charge

10        of the sale, I would ask you to -- well, I'm sorry

11        Mr. Wilcox, you represent the bidding party.

12        Would you please prepare an order that approves

13        the sale on the terms as announced, and that is

14        inclusive of the causes of action that we

15        discussed today and announced that were included

16        in the sale, and also specifies which of those

17        causes of action are subject to the objection that

18        was lodged before the hearing today?

19              MR. WILCOX:  Yes, Your Honor.

20              THE COURT:  Very well.  Obviously, it goes

21        without saying, that you will submit the proposed

22        order to Mr. Davis and Mr. Thompson before

23        submitting it to the Court.  If time becomes of

24        essence -- I have a very full docket next week --

25        once the order's submitted, please call chambers

Page 36

1          and let us know, and they can expedite the order

2          for my signature.

3               If any disputes arise as to the terms of the

4          order, which I don't imagine, but if they do,

5          notify chambers immediately, request an emergency

6          hearing, and we will do everything possible to

7          convene a telephonic hearing.

8               If there's nothing further to be brought

9          before the Court, Mr. Thompson?

10              MR. THOMPSON:  Your Honor, should the Trustee

11         prepare an order denying the 9019 motion separate

12         and apart from the order approving the sale?

13              THE COURT:  Yes, sir.  Mr. Thompson will

14         prepare the order denying the Trustee's Motion for

15         Approval of the Settlement.  Let me get the docket

16         number for that pleading -- unless you have it,

17         Mr. Thompson, to announce -- 5-5-0.

18              Is there anything further to be brought

19         before the Court at this time?

20              There being nothing further, thank you very

21         much.  This hearing is concluded.  We are

22         adjourned.

23              (Proceedings adjourned at 2:59 p.m.)

24

25

1                    CERTIFICATE OF REPORTER

2

3    STATE OF FLORIDA )

4    COUNTY OF ALACHUA)

5

6          I, Aprille Lucas, FPR, Notary Public, State

7    of Florida, do hereby certify that I was

8    authorized and did the foregoing proceedings, and

9    that the transcript, pages 1 through 37 is a true

10   and correct record of my stenographic notes.

11         Dated this 2nd day of March 2016, Alachua

12   Country, Florida.

13

14   _____

15         Aprille Lucas, FPR, Notary Public

16

17

18

19

20

21

22

23

24

25